# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JOSE M. CANDELARIO,                :        CIVIL ACTION

    Plaintiff,              :

v.                                 :

JERRY C. FORSYTH, JR.,             :
Senior Officer,
                                   :
    Defendant.                        NO. CV207-01

## O R D E R

Plaintiff, Jose M. Candelario, filed the above-captioned case against Defendant, Jerry C. Forsyth, Jr., asserting an equal protection claim and a First Amendment retaliation claim pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388, 391-97 (1971).

The Magistrate Judge entered a report and recommendation, which suggested that Forsyth's motion for summary judgment should be granted. Presently before the Court are Candelario's objections to the report. Because genuine issues of material fact remain in dispute as to Candelario's claims, his objections will be **SUSTAINED**.

**BACKGROUND**

Viewing the evidence in the light most favorable to

Plaintiff, as the Court must on a summary judgment motion, the facts are as follows. Candelario, who is now incarcerated at the federal prison in Coleman, Florida, filed this case challenging certain conditions of his confinement while he was incarcerated at the Federal Correctional Institution in Jesup, Georgia.

On or about February 6, 2006, Candelario was housed in the CA unit at the Jesup prison. According to Plaintiff, on February 16, 2006, Defendant segregated the unit television rooms in his housing area based on race. The evidence adduced by Candelario shows that Forsyth directed that the TV room dedicated to sports programs was for blacks only, and that the general-viewing TV room was for whites only.

It is undisputed that, during the time period relevant to this dispute, whites were in the minority in the CA unit. According to the evidence adduced by Plaintiff, Defendant provided segregated TV viewing rooms because the white inmates needed to be able to watch TV programs of their choice without being outvoted by black and/or Latino inmates. As a result of this policy, Candelario contends that he was subjected to invidious discrimination, and that whites received better treatment.

Candelario also asserts that Forsyth retaliated against

2

him for complaining about this racial segregation by having him transferred to a different housing unit within the prison. It is undisputed that, on February 18, 2006, Candelario was transferred to the CB unit, within a day after Candelario sought to file an internal grievance against Forsyth.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor[,]" United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437

3

AO 72A
(Rev. 8/82)

(11th Cir. 1991)(en banc)(internal quotation marks omitted).

**DISCUSSION**

**I. Equal Protection Claim**

Unless it is in response to a specific threat to security or discipline, government-enforced racial segregation in prison violates the equal protection clause of the Fourteenth Amendment. "Since Brown v. Board of Education . . . , it is unmistakably clear that racial discrimination by governmental authorities in the use of public facilities cannot be tolerated." Washington v. Lee, 263 F. Supp. 327, 331 (M.D. Ala. 1966), aff'd, 390 U.S. 333, 333-34 (1968); 42 U.S.C. § 2000b-2; 28 C.F.R. § 551.90; United States v. Wyandot County, 480 F.2d 969, 970-71 (10th Cir. 1973); Sockwell v. Phelps, 20 F.3d 187, 189-92 (5th Cir. 1994).

In the report and recommendation, the Magistrate Judge explained that Plaintiff could not recover on his equal protection claim unless he proved that he was similarly situated with other inmates who received better treatment, and that the discrimination was based on race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). Strict scrutiny

4

applies either when the government impinges on a fundamental right or when it discriminates based on a suspect class. E.g., Hernandez v. Fla. Dep't of Corr., 281 Fed. App'x 862, 867 (11th Cir. 2008).

Forsyth urges that it is irrelevant whether he stated at a prisoners' "town hall meeting" that there would be a whites-only TV room and a blacks-only TV room. Forsyth argues that any such statements were "imprudent if made[,]" but that "[a]ny stray thoughts on the subject which may have been offered by Forsyth . . . [were] not material." Dkt. No. 40 at 2. Defendant posits that his private thoughts did not matter because the prison had a policy whereby an inmate committee decided TV programming.

The Court recognizes that Defendant has presented some evidence that the TV rooms were divided by programming, not race. Dkt. No. 46 at 7-8. Yet, at this stage of the proceedings, the Court cannot make credibility determinations, and must view the evidence in the light most favorable to the nonmoving party.

The Court finds that summary judgment is not warranted in Defendant's favor on Candelario's equal protection claim. First, Candelario presented direct evidence that Forsyth stated that the TV rooms would be segregated by race, and a

5

reasonable factfinder could conclude that the TV rooms were in fact so segregated at Forsyth's direction. Dkt. No. 38, Exs. A-F; see also Dkt. No. 41 at 1-2. See Harris v. Ostrout, 65 F.3d 912, 916-17 (11th Cir. 1995). Accordingly, there is credible evidence of discrimination based on race.

Second, the Court does not find any merit in the notion that officially-segregated TV rooms in prison are lawful because the inmates of different races are not "similarly situated." Government-imposed racial segregation in public facilities, absent compelling justification, has been unlawful since Plessy v. Ferguson was abrogated. See 163 U.S. 537, 552 (1896)(Harlan, J., dissenting). "Separate [public] facilities are inherently unequal." Brown v. Board of Education, 347 U.S. 483, 495 (1954). There has been no suggestion in the record that there was any compelling justification for the segregation, or that any distinguishing factor other than race was involved. If what Candelario asserts is true, he has established an equal protection claim.

Hernandez is not to the contrary. There, the court noted that the plaintiff's equal protection claim could not succeed because he had not shown that any similarly situated inmates received favorable treatment. At issue in Hernandez

6

was prison officials' verbal abuse of the prisoner, and the court noted that Hernandez's claim failed because the plaintiff conceded that other inmates (presumably those of a different race or nationality) also received the same form of verbal abuse by the defendants "just for kicks." Hernandez, 281 Fed. App'x at 867. In other words, Hernandez's claim failed because the prison officials were averred to be equal-opportunity verbal abusers.

Candelario's claim is materially different. Plaintiff faults Defendant for treating the races differently, viz., segregating the TV rooms according to race. And although the "separate but equal" doctrine has long been confined to the ash heap of constitutional history, Candelario further maintains that the accommodations provided to white inmates was appreciably better than that afforded to Hispanic and black inmates.

Whether the TV rooms were segregated by the choice of the inmates, or at Forsyth's direction, is a question for the factfinder to resolve.

## II. Retaliation Claim

"[T]he gist of a retaliation claim is that a prisoner is

penalized for exercising the right of free speech. . . . A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003)(internal quotation marks omitted). Generally, where the plaintiff has presented direct evidence of an illegal motive for the retaliation, summary judgment is inappropriate. Harris, 65 F.3d at 917.

Defendant insists that Plaintiff's retaliation claim fails because Forsyth lacked the authority to transfer Candelario. Additionally, Forsyth asserts that the CA unit was a transitional unit that inmates were housed in until space became available in their permanently assigned units.

Forsyth concedes that he can make recommendations to the ultimate decision-makers about transfers. Defendant also admits that he suggested to the "unit team"[1] that the prisoner be moved because the officer feared that Candelario would be a disruptive influence, given his dissatisfaction with the TV programming in the CA unit. Dkt. No. 31, Ex. 6, ¶¶ 6-8.

---

[1] The unit team consists of the FCI Jesup unit manager, case managers, and correctional counselors. Dkt. No. 31-3 ¶ 16.

AO 72A
(Rev. 8/82)

To the contrary, Plaintiff maintains that Defendant asked Candelario why he had filed a grievance against him, and told Plaintiff that Candelario would be moving to the CB unit based on the grievance. According to Plaintiff, Defendant told him to "pack all your stuff[,] you are moving to CB Unit cell #608[.] [S]ince you want to file a [grievance] against me[,] you['re] out of here." Dkt. No. 38, Ex. A ¶ 6. The Court concludes that this is direct evidence of a retaliatory motive by Forsyth for the transfer decision. Harris, 65 F.3d at 917.

Candelario asserts that Forsyth had him transferred to the CB unit by telling the unit team, falsely, that he was, and would continue to be, a disruptive influence in the CA unit. Plaintiff submits that it was not a coincidence that bed space "became available" in his "permanent housing unit" within a day of the filing of his grievance. Id. at ¶ 10.

Candelario also denies that the CA unit was an overflow or transitional unit. Plaintiff has presented declarations from two fellow inmates, which provide support for Plaintiff's claim that the CA unit was used to house prisoners permanently. According to the declaration of Albert Davis, he was transferred to the CA unit on February 2, 2006. Prison staff told Davis at that time that the move

9

was necessitated because of a shortage of staff. Davis stayed in the unit until he was transferred to the low security federal prison facility in Coleman, Florida, in September 2007. Dkt. No. 38, Ex. B. ¶¶ 2-3.

Inmate Marc Russ provided a declaration along the same lines, stating that he stayed in the FB unit, which Defendant also stated was a temporary or transitional unit, until his transfer to the Coleman facility in January 2008. Dkt. No. 38, Ex. C ¶ 3. Moreover, Plaintiff has presented evidence from several prisoners that no official ever told them that either the FB unit or the CA unit were overflow or transitional units.[2]

In Defendant's reply brief, he refines his submission about the CA unit being temporary housing. Forsyth now maintains that the unit may not have been used for transitional housing as to all inmates housed there, but that it was so used for some of the inmates. Defendant then speculates that "[p]erhaps as to those other inmates, bed space in the unit to which they were to be transferred did not open up for some time, or never opened up." Dkt. No. 40

---

[2] As Defendant notes, there is no requirement that correctional officers explain to inmates every reason for their every action. However, Plaintiff's evidence is admissible and tends to show that Defendant's explanation that the CA unit was "transitional housing" may not be worthy of credence.

10

at 5-6. The Court recognizes that Forsyth may be able to convince the factfinder based on such an argument, but Defendant's shifting rationales provide a sufficient basis for a factfinder to reject such explanations as pretextual.

Defendant suggested that summary judgment was proper as to the retaliation claim because Forsyth lacked the authority to transfer any inmate. The Court concludes that a requirement of "unfettered discretion" on the part of the defendant is inconsistent with the law of prison retaliation.

Defendant admits that his suggestion was taken into account by the unit team, and there is no evidence that any other factors, beyond Forsyth's recommendation, factored into the transfer decision. Dkt. No. 31-4 at 14. Indeed, the individual who Forsyth asserts made the transfer decision, Correctional Counselor David Daniels, has filed a declaration stating that he told Candelario that "he was being moved because he was causing problems with the TV." Dkt. No. 40, Ex. 9, Daniels Decl. ¶ 7; see Dkt. No. 40 at 5.

Daniels stated that this occurred after Candelario told Daniels that he wanted to file a grievance against Forsyth, and that the transfer took place when "Candelario received his administrative remedy [form] from me." Id. ¶¶ 6-7. All of this occurred within a day of Candelario expressing a

11

desire to file a grievance against Forsyth. A reasonable factfinder could conclude that Candelario was transferred because he filed a grievance against Forsyth.

Actionable retaliation does not depend on the defendant having unbridled or ultimate authority himself to discipline or transfer the plaintiff. Indeed, Forsyth's brief recognizes as much, where Defendant states that the inmate must show only that his exercise of his constitutional rights was a substantial or motivating factor for the retaliation, citing Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998). See Dkt. No. 31-3 at 12.

The Eleventh Circuit made this point clear in Harris, where the court found actionable retaliation based on the correctional officer filing allegedly false "disciplinary violations" against the prisoner, even though the ultimate decision to discipline the prisoner rested with the prison disciplinary review board. 65 F.3d at 916-17; see also 60 Am. Jur. 2d Penal & Correctional Institutions § 137 (May 2008 Supp.)(citing numerous cases for the proposition that an inmate need only show a "causal connection" between the inmate's complaint and the retaliatory act).

If the factfinder credits the evidence adduced by Plaintiff, it could find that his transfer was ordered in

AO 72A
(Rev. 8/82)

retaliation for the prisoner's decision to file a grievance against Officer Forsyth, not for any legitimate penological objective. Whether Candelario was in fact disruptive and warranted transfer for that reason is a disputed question of fact. In addition, whether Candelario was transferred because bed space became available on February 18, 2006, or because Candelario filed a grievance, is not amenable to summary disposition.

### III. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In evaluating a qualified immunity defense, the Court considers whether the plaintiff's rights were violated at all, and whether the law was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999).

In January, the U.S. Supreme Court abandoned the rigid "order of battle" in qualified immunity cases, which required

13

the two-step inquiry to proceed in the order described above. District courts now have the discretion to decide a case based on whether the law is clearly established, and leave the question of whether there was a constitutional violation at all unanswered. Pearson v. Callahan, 129 S. Ct. 808, 816-22 (2009).

In this case, the Court has already found that, if Candelario's evidence is credited by the jury, Forsyth violated the Constitution's equal protection clause by implementing a policy whereby the TV viewing rooms were segregated by race. Plaintiff's evidence, viewed in the light most favorable to him, also shows that he was retaliated against by Forsyth for filing a grievance against the officer. O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004)(the court must view the evidence in the light most favorable to the nonmoving party in considering whether there is qualified immunity).

With respect to whether the law was clearly established, "the salient question . . . is whether the state of the law in [February 2006] gave [Forsyth] fair warning that [his] alleged treatment of [Candelario] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002). The Supreme Court

14

has cautioned against requiring that the prior law be clearly established in cases with "fundamentally similar" factual scenarios. United States v. Lanier, 520 U.S. 259, 270-71 (1997). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in light of pre-existing law the unlawfulness must be apparent."

Anderson v. Creighton, 483 U.S. 635, 640 (1987)(citations omitted).

The Court concludes that the relevant law was clearly established in February 2006. Clearly established law barred racial segregation in prison, absent extraordinary circumstances, long before that date. There is no evidence that there was a compelling need for the segregation, and any reasonable officer would have known that such segregation was not lawful. Lee v. Washington, 390 U.S. 333, 333-34 (1968); 42 U.S.C. § 2000b-2.

Likewise, a reasonable prison official should have known

15

that it was unlawful to retaliate against an inmate for filing a grievance against the prison official, even if the official could only influence the retaliatory decision, and did not have the ultimate authority to carry out the retaliation. The Eleventh Circuit's 1995 decision in <u>Harris</u> served as fair warning of such liability. 65 F.3d at 916-17. Therefore, Forsyth is not entitled to qualified immunity for his conduct.

**CONCLUSION**

For the reasons described above, Candelario's objections are **SUSTAINED**. Forsyth's motion for summary judgment is **DENIED**. Dkt. No. 31.

**SO ORDERED**, this ___25th___ day of March, 2009.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)